IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>REAL PROPERTY AND IMPROVEMENTS LOCATED AT 218 CHEADLE LOOP ROAD, SEAFORD, VIRGINIA 23696,<br><br>Defendant In Rem. | Civil No. 4:20-cv-_____ |

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

COMES NOW the plaintiff, United States of America, by and through its counsel, G. Zachary Terwilliger, United States Attorney for the Eastern District of Virginia, and Kevin Hudson, Assistant United States Attorney, and brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

**NATURE OF THE ACTION**

1. The United States brings this action *in rem* seeking the forfeiture of all right, title, and interest in the defendant *in rem* identified in the case caption above (the "defendant property").

2. The United States' claim arises from the defendant property being maintained as a drug-involved premises. More particularly, the defendant property constitutes real property used and intended to be used to facilitate violations of 21 U.S.C. § 846 (Conspiracy to Distribute and Possess with Intent to Distribute Heroin, Cocaine, Cocaine Base, Percocet, Carisoprodol, and Xanax), 21 U.S.C. § 841(a)(1) (Distribution of Heroin, Cocaine, Cocaine Base, and Percocet),

and 21 U.S.C. § 856(a)(2) (Maintain a Drug-Involved Premises), and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7).

3. Heroin is a schedule I controlled substance. Cocaine, cocaine base, Percocet, and Carisoprodol are schedule II controlled substances. Specifically, Percocet contains oxycodone, a schedule II controlled substance. Xanax, which contains alprazolam, is a schedule IV controlled substance.

4. As defined by 21 U.S.C. § 802(11), "distribute" means to deliver a controlled substance.

5. As defined by 21 U.S.C. § 802(8), "deliver" means "the actual, constructive, or attempted transfer of a controlled substance."

## THE DEFENDANT IN REM

6. The defendant property consists of real property known as 218 Cheadle Loop Road, Seaford, Virginia 23696 with all appurtenances, improvements and attachments thereon, and is more fully described in Exhibit A. The record owners of the defendant property are the William W. Kerlin Trust and the Sandra H. Kerlin Trust. The procedures governing civil forfeiture of real property are set forth at 18 U.S.C. § 985.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over actions commenced by the United States under 28 U.S.C. § 1345, and over forfeiture actions under 28 U.S.C. § 1355(a) and (b).

8. This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b)(1)(A) because the acts and omissions giving rise to the forfeiture took place in the Eastern District of Virginia. In addition, the Court has *in rem* jurisdiction under 28 U.S.C. § 1355(b)(1)(B) because the defendant property is found within the Eastern District of Virginia,

and 28 U.S.C. § 1395(b) provides for forfeiture of property in the district in which the property is found.

9. Venue is proper within this judicial district under 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture took place in the Eastern District of Virginia, and under 28 U.S.C. § 1355(b)(1)(B) and 28 U.S.C. § 1395(b) because the defendant property is located in this district.

## FACTUAL ALLEGATIONS

10. The Drug Enforcement Administration ("DEA") is investigating the drug distribution activities of Michael L. Kerlin ("Kerlin"), who resided at the defendant property. Kerlin used the defendant property to purchase controlled substances from others, to include co-conspirators, as well as to store, use and share controlled substances.

11. Kerlin's father owned the defendant property, but on or about February 22, 2016, Kerlin's father conveyed an undivided one-half interest in the defendant property into the William W. Kerlin Trust and an undivided one-half interest into the Sandra H. Kerlin Trust.

12. On or about November 10, 2015, but no later than November 11, 2015, an associate of Kerlin's ("Associate #1") delivered heroin and cocaine for redistribution to individuals at the defendant property.

13. On or about November 11, 2015, Kerlin distributed heroin and cocaine to a person ("Person #1") at the defendant property.

14. On or about November 11, 2015, after distributing heroin and cocaine to Person #1, Kerlin called 911 because he believed that Person #1 had overdosed.

15. On or about November 11, 2015, the York County Fire Department and the York-Poquoson Sheriff's Office responded to the defendant property following Kerlin's 911 call. The first responders found Person #1 unresponsive in the defendant property. Kerlin was present at

the defendant property and admitted drug use was involved, but stated that he was not sure of the drug type.

16. Once law enforcement arrived at the defendant property on or about November 11, 2015, in plain view they observed a white powdery substance scattered on the dresser drawer, several plastic cards with a white powdery substance and several small bags of a white/tan powdery substance in an open drawer. In the master bathroom, there were spoons, wires and small open bags of a white powdery substance and a hard rock substance. In all, law enforcement collected approximately fifty-eight items of suspected illegal drugs, several currency notes with a white powdery substance on them, two glass pipes, a small digital scale, a grinder, and small mirror. Some of the items were taken to the Virginia Department of Forensic Science for analysis, where the items tested positive for heroin and cocaine.

17. While law enforcement and medics were at the defendant property on November 11, 2015, Kerlin's father arrived at the defendant property. Kerlin's father was aware that law enforcement and medics were present at the defendant property because it was suspected that Person #1 had overdosed on drugs.

18. Once medics arrived at the defendant property on or about November 11, 2015, they attempted to revive Person #1, but were unsuccessful. Person #1 never regained consciousness. Person #1 was transported to Mary Immaculate Hospital in Newport News, where Person #1 was pronounced brain dead on November 13, 2015. Hospital records revealed that Person #1 had severe anoxic brain injury. The Medical Examiner determined that person #1 died from acute combined cocaine and opiate intoxication.

19. Following the death of Person #1, Kerlin temporarily vacated the defendant property and moved into various hotels on the Peninsula. As Kerlin explained to an associate

("Associate #2"), Person #1 had "ODed" at the defendant property and Kerlin did not want to be there for that reason. By early 2016, however, Kerlin returned to living at the defendant property. Between the death of Person #1 and approximately April 2016, Associate #2 delivered heroin to Kerlin at the defendant property approximately thirty to forty times. Usually, Associate #2 delivered "eight ball" (3.5 gram) quantities of heroin to Kerlin and, at times, Kerlin and Associate #2 would pool their money to purchase a "quarter" (7 grams) of heroin.

20. At various times from in or about March 2016 through on or about May 1, 2016, at the defendant property, Kerlin distributed heroin, some of which was obtained from Associate #1 and some of which was obtained from Associate #2, as well as cocaine base to a person ("Person #2").

21. On or about April 18, 2016, Kerlin distributed Percocet to a person ("Person #3") at the defendant property.

22. On or about May 2, 2016, at the defendant property, Kerlin, Associate #1, as well as two other individuals ("Person #4" and "Person #5") used heroin and cocaine base.

23. In about the early afternoon, on or about May 5, 2016, a person ("Person #6") spoke to her mother ("Person #7"). Person #6 told Person #7 that Person #6 was going to a party in Seaford and had tried calling "Mike." Kerlin went by the nickname "Mike."

24. On or about May 5, 2016, but no later than May 7, 2016, at the defendant property, Kerlin distributed heroin to Person #6.

25. On or about May 6, 2016, Associate #2 and Kerlin exchanged text messages related to Associate #2 delivering heroin to Kerlin.

26. On or about May 7, 2016, at the defendant property, Kerlin placed Person #6's body in a garbage can to dispose of it at his business in Newport News ("Business #1").

27. Between about May 7, 2016 and about May 8, 2016, Kerlin drove Person #6's body to Business #1 because Kerlin believed that Person #6 had overdosed at the defendant property.

28. Between about May 7, 2016 and about May 8, 2016, Kerlin placed a garbage can containing Person #6's body outside and within the gated compound of Business #1 with numerous propane tanks in order to hide Person #6's body.

29. After realizing that Person #6 was missing, some of person #6's friends went looking for Person #6. The friends went to Business #1. On or about May 8, 2016, at approximately 2:00AM, the friends observed Kerlin leaving Business #1 in a pickup truck. The friends called the York-Poquoson Sheriff's Office, who responded and stopped Kerlin. Law enforcement asked Kerlin if he knew Person #6 and Kerlin responded in the affirmative. When law enforcement asked where Person #6 was, Kerlin declined to answer any further questions.

30. On or about May 8, 2016, Person #3 heard from a friend that Person #6 was missing and that Person #6 had been hanging out with "Mike." Person #3 called Kerlin and asked Kerlin if he knew someone with Person #6's name, to which Kerlin responded in the affirmative. Kerlin told Person #3 he would call Person #3 back on a landline phone.

31. On or about May 8, 2016, Kerlin quickly called Person #3 back and told Person #3 if he needed Person #3's help for a few hours. Kerlin told Person #3 he could come get Person #3. When Kerlin arrived, he was acting erratic. Person #3 asked Kerlin where Person #6 was and Kerlin told Person #3 that Person #6 was dead at Business #1 and had overdosed. Kerlin told Person #3 that he needed help moving Person #6's car from his garage to Person #6's house in Williamsburg. Person #3 did not assist Kerlin, rather Person #3 called a friend ("Person

#8") and told Person #8 to call the police and send them to Business #1 because Person #6 was dead.

32. On or about May 8, 2016, Newport News police officers, crime scene technicians, and homicide detectives responded to Business #1, where they discovered Person #6's dead body in a trashcan. Person #6's body was taken to the Medical Examiner's Office for an autopsy.

33. The Medical Examiner reported that Person #6's manner of death was undetermined. The pathological diagnosis as to Person #6 was as follows: (1) a combined cocaine, heroin, nordiazepam and alprazolam intoxication; (2) superficial blunt force injuries to the head, neck, extremities with perimortem abrasions of the torso and extremities; (3) postmortem concealment of the body; and (4) other findings related to natural pathology. In an autopsy report, the Medical Examiner stated: "An asphyxia death cannot be excluded, given the sternocleidomastoid muscle bruise and the positioning of the body." The Medical Examiner explained that, "[t]his 46- year old was found dead jackknifed, head and feet first, concealed in a wheeled trashcan behind a business."

34. On or about May 8, 2016, law enforcement obtained a search warrant for the defendant property. Upon executing that search warrant, law enforcement found Person #6's car in a detached garage on the defendant property. Law enforcement also found Person #6's purse and phone inside Kerlin's bedroom in the defendant property.

35. On February 16, 2017, Kerlin was sentenced in the York-Poquoson Circuit Court for concealing a dead body in violation of Va. Code § 18.2-323.02. This conviction arose from Kerlin's disposal of Person #6's body as described above.

## CLAIM FOR RELIEF
(Forfeiture under 21 U.S.C. §§ 881(a)(7))

36. The United States incorporates by reference paragraphs 1 through 35 above as if fully set forth herein.

37. Title 21, United States Code, Section 881(a)(7) subjects to forfeiture, "[a]ll real property, including any right, title, and interest…in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment."

38. As set forth above, the defendant property constitutes real property used and intended to be used to facilitate violations of 21 U.S.C. § 846 (Conspiracy to Distribute and Possess with Intent to Distribute Heroin, Cocaine, Cocaine Base, Percocet, Carisoprodol, and Xanax), 21 U.S.C. § 841(a)(1) (Distribution of Heroin, Cocaine, Cocaine Base, and Percocet), and 21 U.S.C. § 856(a)(2) (Maintain a Drug-Involved Premises).

39. As such, the defendant property is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7).

## PRAYER FOR RELIEF

WHEREFORE, plaintiff requests that judgment be entered in its favor against the defendant property; that pursuant to law, notice be provided to all interested parties to appear and show cause why the forfeiture should not be decreed; that the defendant property be forfeited to the United States of America and delivered into its custody for disposition according to law; that plaintiff be awarded its costs and disbursements in this action; and for such and further relief as this Court may deem just and proper.

Dated:  November 12, 2020

                    Respectfully submitted,

                    G. Zachary Terwilliger
                    United States Attorney

By:     _____

                    Kevin Hudson
                    Assistant United States Attorney
                    Virginia State Bar No. 81420
                    Attorney for the United States
                    721 Lakefront Commons, Suite 300
                    Newport News, Virginia 23606
                    Office Number: (757) 591-4000
                    Facsimile Number: (757) 591-0866
                    Email Address: kevin.hudson@usdoj.gov

**VERIFICATION**

I, Werner K. Extine, Taskforce Officer, Drug Enforcement Administration, declare under penalty of perjury as provided by 28 U.S.C. § 1746, that the foregoing Complaint for Forfeiture in Rem is based on information known by me personally and/or furnished to me by various federal, state, and local law enforcement agencies, and that everything contained herein is true and correct to the best of my knowledge.

Executed at Newport News, Virginia, this 12th day of November, 2020.

_____
Werner K. Extine
Taskforce Officer
Drug Enforcement Administration